UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.G.,

                Petitioner,

- against -

THOMAS DECKER, New York Field Office Director for U.S. Immigration and Customs Enforcement, CARL DUBOIS, Director of the Orange County Correctional Facility, UBAID UL-HAQ, Assistant Chief Judge, Executive Office of Immigration Review, DAVID NEAL, Director, Executive Office of Immigration Review, ALEJANDRO MAYORKAS, Secretary of Homeland Security, MERRICK GARLAND, Attorney General of the United States,

                Respondents.

**ORDER**

22 Civ. 6273 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioner J.G. has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his prolonged detention in immigration custody without a bond hearing. (Second Am. Pet. (Dkt. No. 14) ¶¶ 1-2, 11) J.G. was arrested by U.S. Immigration and Customs Enforcement ("ICE") on December 14, 2021, and was detained by the New York Field Office of ICE at Orange County Correctional Facility ("Orange County Correctional") in Goshen, New York. (Id. ¶¶ 3, 19) On July 25, 2022, Petitioner was transferred to the Adams County Correctional Center ("Adams County Correctional") in Natchez, Mississippi, where he remains today. (Id. ¶¶ 3, 43-46; see also Dec. 12, 2022 Ptr. Ltr. (Dkt. No. 23) at 1-3))

As explained below, the Court concludes that it does not have jurisdiction over J.G.'s petition, and this action will be transferred to the United States District Court for the Southern District of Mississippi.

**BACKGROUND**

J.G. is a 59-year-old permanent resident of the United States. (Second Am. Pet. (Dkt. No. 14) ¶ 3; Dec. 12, 2022 Ptr. Ltr. (Dkt. No. 23) at 1) Although he was born in the Dominican Republic, he has lived in the United States for more than forty years. (Second Am. Pet. (Dkt. No. 14) ¶ 13)

On August 14, 2018, officers of the New York City Police Department arrested J.G., and charged him with sexual abuse in the first degree, in violation of Penal Law § 130.65(3), and endangering the welfare of a child, in violation of Penal Law § 260.10(1). (Mascia Decl. (Dkt. No. 19) ¶ 6; DeBellis Decl. (Dkt. No. 15) ¶ 3) The charges against J.G. arose from allegations that he had attempted sexual contact with a minor under the age of eleven years old. (Resp., Ex. 3 (Dkt. No. 18-3) at 7) On March 22, 2019, J.G. pled guilty to sexual abuse in the second degree, in violation of Penal Law § 130.60(2). (Mascia Decl. (Dkt. No. 19) ¶ 6; Second Am. Pet. (Dkt. No. 14) ¶ 17) On October 1, 2020, Petitioner was sentenced to a conditional discharge and a $1,000 fine. (Mascia Decl. (Dkt. No. 19) ¶ 6; DeBellis Decl. (Dkt. No. 15) ¶ 3) The court also entered a five-year order of protection. (Id.)

On December 14, 2021, J.G. was arrested by ICE officers at his home in Queens, New York. (Second Am. Pet. (Dkt. No. 14) ¶ 19) That same day, J.G. was placed in removal proceedings. (Id.) He has been detained since the date of his arrest. (Id.) J.G. was charged as removable because ICE classifies his conviction for sexual abuse in the second degree as an

aggravated felony, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and as a crime of domestic violence, stalking, or child abuse, pursuant to 8 U.S.C. § 1227(a)(2)(E)(i). (Id. ¶¶ 17, 19)

On January 26, 2022, J.G. moved to terminate the removal proceedings, arguing that his crime of conviction does not constitute an aggravated felony or a domestic violence, stalking, or child abuse offense. (Id. ¶ 21) On January 31, 2022, J.G. filed applications for cancellation of removal and asylum, and withholding of removal under the Convention Against Torture ("CAT"). (Id. ¶ 22) J.G. contends that, in the Dominican Republic, deportees with criminal convictions and mental health issues are detained, persecuted, and tortured. (Id.) On February 25, 2022, an immigration judge denied J.G.'s motion to terminate, finding that his crime of conviction is an aggravated felony, which renders him ineligible for asylum and cancellation of removal. (Id. ¶ 24) In an April 4, 2022 decision, the immigration judge explained her reasons for denying J.G.'s motion to terminate and denied his applications for withholding of removal and protection under CAT. (Id. ¶ 27) The immigration judge ordered J.G. removed to the Dominican Republic. (Id.)

On April 28, 2022, J.G. filed a timely notice of appeal to the Board of Immigration Appeals ("BIA"). (Id. ¶ 28) On August 25, 2022, the BIA dismissed J.G.'s appeal, and upheld the immigration judge's denial of J.G.'s application for deferral of removal under CAT. (Id. ¶ 30) On September 1, 2022, J.G. appealed the BIA's decision to the U.S. Court of Appeals for the Second Circuit, and moved for a stay of removal. (Id. ¶ 31)

Between December 14, 2021 and his transfer on July 25, 2022, J.G. was detained by the New York Field Office of ICE at Orange County Correctional in Goshen, New York. (Id. ¶¶ 3, 19) On July 25, 2022, J.G. was transferred to Adams County Correctional in Natchez, Mississippi, where he is presently detained. (Id. ¶ 3, 43-46)

On July 25, 2022, J.G. filed a petition for a writ of habeas corpus in this District. (Pet. (Dkt. No. 1)) On August 18, 2022, J.G. filed his First Amended Petition for a writ of habeas corpus (First Am. Pet. (Dkt. No. 9)), and on September 15, 2022, J.G. filed his Second Amended Petition for a writ of habeas corpus (Second Am. Pet. (Dkt. No. 14)). J.G. names as Respondents Thomas Decker, the New York Field Office Director for ICE; Carl Dubois, the Director of Orange County Correctional; Ubaid Ul-Haq, Assistant Chief Judge, Executive Office of Immigration Review; David Neal, Director, Executive Office of Immigration Review; Alejandro Mayorkas, Secretary of Homeland Security; and Merrick Garland, Attorney General of the United States. (Id.)

## DISCUSSION

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Rasul v. Bush, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). "The question whether [a court] has jurisdiction over [a] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [the court] have jurisdiction over him or her?" Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004).

As to the first question, in Padilla, the Supreme Court reaffirmed that, "in habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Id. at 435 (collecting cases). While the Supreme Court and Second Circuit have left open the question of whether the "immediate custodian" rule for "core" habeas challenges applies in the immigration context, most of the

4

courts in this District have found that it does. See, e.g., Darboe v. Ahrendt, 442 F. Supp. 3d 592, 594 (S.D.N.Y. 2020); Sanchez v. Decker, No. 19 Civ. 8354 (RA), 2019 WL 6311955, at *4 (S.D.N.Y. Nov. 25, 2019); Almazo v. Decker, No. 18 Civ. 9941 (PAE), 2018 WL 5919523, at *2 (S.D.N.Y. Nov. 13, 2018); S.N.C. v. Sessions, 325 F. Supp. 3d 401, 406-07 (S.D.N.Y. 2018); Zhen Yi Guo v. Napolitano, No. 09 Civ. 3023 (PGG), 2009 WL 2840400, at *3 (S.D.N.Y. Sept. 2, 2009).

A "core" habeas challenge concerns a "challenge[] to present physical confinement." Padilla, 542 U.S. at 435; see also Darboe, 442 F. Supp. 3d at 594 ("[B]ecause [petitioner's] challenge goes directly to his continued detention, . . . [he] raises a 'core' habeas challenge."). "Non-core" habeas challenges, by contrast, "include challenges to forms of custody other than physical confinement, including orders of removal." Heller v. Barr, No. 19 Civ. 4003 (ER), 2019 WL 2223183, at *1 (S.D.N.Y. May 22, 2019). A "request for a bond hearing is essentially a challenge to [the petitioner's] current immigration detention and therefore falls within the ambit of 'core' proceedings." Golding v. Sessions, No. 18 Civ. 3036 (RJS), 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018); see also Heller, 2019 WL 2223183, at *2 ("Petitioners' argument that they are challenging the legal process of the bond hearing, as opposed to the confinement that resulted from the legal insufficiency of the bond hearing, relies upon a false distinction. Petitioners seek as relief a bond hearing at which Petitioner can challenge his current detention.").

Here, J.G. seeks an order compelling his release from custody, and, in the alternative, a bond hearing. (Second Am. Pet. (Dkt. No. 14) at 16; see also Pet. Br. (Dkt. No. 16) at 9, 32) Accordingly, J.G. has brought a "core" habeas challenge, and the "immediate custodian" rule applies.

5

Although J.G. states that "a substantial part of the events giving rise to the claims and relevant facts occurred within this [D]istrict," and thus venue is proper in this District (Second Am. Pet. (Dkt. No. 14) ¶ 12), the "immediate custodian" rule replaces "traditional venue considerations." S.N.C., 325 F. Supp. 3d at 408 (citing Padilla, 542 U.S. at 444).

And although J.G. states that he "was detained at [Orange County Correctional] in Goshen, New York[, and] . . . has been and is presently detained at the direction of Mr. Decker" (Second Am. Pet. (Dkt. No. 14) ¶ 12), other courts have found that "Decker is . . . not [an immigration detainee's] 'immediate custodian' under Padilla." Sanchez, 2019 WL 6311955, at *4; see also Darboe, 442 F. Supp. 3d at 595 ("[N]either the ICE Handbook nor the ICE Standards demonstrates that Decker exercises 'day-to-day' control over [an immigration detainee] while he is detained.").

> While it may be the case that, in the immigration habeas context, the Director of ICE's New York City Field Office has more immediate control over the petitioner than the Attorney General or some other remote supervisory official does, that Director nonetheless does not have immediate, "day-to-day control" over the petitioner's physical custody.

Sanchez, 2019 WL 6311955, at *4 (quoting Padilla, 542 U.S. at 439).

Moreover, the fact that "the warden may not have the ultimate authority to release the petitioner or provide him with a bond hearing does not mean that the warden is not the individual's immediate custodian." Id. (citing Benitez v. Unknown Immigr. Officer Employed by Dep't of Homeland Sec., No. 19 Civ. 03153 (GHW), 2019 WL 3450743, at *2 (S.D.N.Y. July 22, 2019)).

The Court concludes that the warden of Adams County Correctional is the proper respondent, because that individual is J.G.'s "immediate custodian."

Having determined that the warden of Adams County Correctional is the proper respondent, this Court must consider the second question posed in Padilla: whether the Court has jurisdiction over Petitioner. Padilla, 542 U.S. at 434.

The federal habeas statute states that a "writ[] of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has interpreted this language to "confirm[] the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." Padilla, 542 U.S. at 443.

Because J.G.'s petition is a "core" habeas challenge, it can only be brought in the district of confinement. Although J.G. was initially detained at Orange County Correctional in New York, he was transferred to Adams County Correctional in Mississippi on the same day that he filed his original habeas petition. (Second Am. Pet. (Dkt. No. 14) ¶¶ 3, 19, 43-46; Pet. (Dkt. No. 1)) Because J.G. is currently confined at Adams County Correctional in the Southern District of Mississippi, and because jurisdiction lies only in the district of confinement, see Padilla, 542 U.S. at 443, jurisdiction lies only in the United States District Court for the Southern District of Mississippi.[1]

"When a civil action is filed in a district court that lacks jurisdiction, that court 'shall, if it is in the interest of justice[,] transfer such action to . . . any other such court in which the action . . . could have been brought at the time it was filed or noticed.'" Shehnaz v. Ashcroft,

---

[1] J.G. requests that this Court conduct a bond hearing and order his immediate release from Adams County Correctional based on its "inherent authority" under Mapp v. Reno, 241 F.3d 221, 222 (2d Cir. 2001) (Dec. 12, 2022 Ptr. Ltr. (Dkt. No. 23) at 3-4). In Mapp, however, the court held "that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction." Mapp, 241 F.3d at 226. Because J.G. is not "properly within [this Court's] jurisdiction," his application is denied.

7

No. 04 Civ. 2578 (DLC), 2004 WL 2378371, at *4 (S.D.N.Y. Oct. 25, 2004) (omissions in original) (quoting 28 U.S.C. § 1631). "Courts have consistently found it in the interest of justice to transfer habeas petitions when jurisdiction is lacking." Id. (citing Roman v. Ashcroft, 340 F.3d. 314, 329 (6th Cir. 2003); Liriano v. United States, 95 F.3d 119, 122 (2d Cir. 1996)). Accordingly, this action will be transferred to the Southern District of Mississippi.

## CONCLUSION

For the reasons stated above, the Clerk of Court is directed to transfer this action to the United States District Court for the Southern District of Mississippi.

Dated: New York, New York
       December 20, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge