UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOAQUIN GARCIA,

           Petitioner,

- against -

THOMAS DECKER, New York Field Office Director for U.S. Immigration and Customs Enforcement, CARL DUBOIS, Director of the Orange County Correctional Facility, UBAID UL-HAQ, Assistant Chief Judge, Executive Office of Immigration Review, DAVID NEAL, Director, Executive Office of Immigration Review, ALEJANDRO MAYORKAS, Secretary of Homeland Security, MERRICK GARLAND, Attorney General of the United States,

           Respondents.

**ORDER**

22 Civ. 6273 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

    Petitioner Joaquin Garcia has been detained by Immigration and Customs Enforcement ("ICE") since December 14, 2021. (Second Am. Pet. (Dkt. No. 14) ¶ 19) He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (id. ¶ 11), seeking an order compelling his release from custody or, in the alternative, a bond hearing. (Id. at 16; see also Ptr. Br. (Dkt. No. 16) at 9, 32)

    For the reasons stated below, Petitioner's request for a bond hearing will be granted.

## BACKGROUND

### I. FACTS

    Petitioner is a 59-year-old permanent resident of the United States. (Second Am. Pet. (Dkt. No. 14) ¶ 3; Dec. 12, 2022 Ptr. Ltr. (Dkt. No. 23) at 1) Although he was born in the

Dominican Republic, he has lived in the United States for more than forty years. (Second Am. Pet. (Dkt. No. 14) ¶ 13)

On August 14, 2018, officers of the New York Police Department arrested Petitioner and charged him with sexual abuse in the first degree, in violation of Penal Law § 130.65(3), and endangering the welfare of a child, in violation of Penal Law § 260.10(1). (Mascia Decl. (Dkt. No. 19) ¶ 6; DeBellis Decl. (Dkt. No. 15) ¶ 3) The charges against Petitioner arise from allegations that he had attempted sexual contact with a minor under the age of eleven years old. (Resp., Ex. 3 (Dkt. No. 18-3) at 7) On March 22, 2019, Petitioner pled guilty to sexual abuse in the second degree, in violation of Penal Law § 130.60(2). (Mascia Decl. (Dkt. No. 19) ¶ 6; Resp., Ex. 3 (Dkt. No. 18-3) at 9) On October 1, 2020, Petitioner was sentenced to a conditional discharge and a $1,000 fine. The court also entered a five-year order of protection. (Mascia Decl. (Dkt. No. 19) ¶ 6; DeBellis Decl. (Dkt. No. 15) ¶ 3; Resp., Ex. 3 (Dkt. No. 18-3) at 9)

On December 14, 2021, Petitioner was arrested by officers of U.S. Immigration and Customs Enforcement ("ICE") at his home in Queens. (Second Am. Pet. (Dkt. No. 14) ¶ 19) That same day, Petitioner was placed in removal proceedings. (Id.) He has been detained since the date of his arrest. (Id.) Petitioner was charged as removable because ICE classifies his conviction for sexual abuse in the second degree as an aggravated felony, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and as a crime of domestic violence, stalking, or child abuse, pursuant to 8 U.S.C. § 1227(a)(2)(E)(i). (Id. ¶¶ 17, 19)

On January 26, 2022, Petitioner moved to terminate the removal proceedings, arguing that his conviction does not constitute an aggravated felony or a domestic violence, stalking, or child abuse offense. (Id. ¶ 21) On January 31, 2022, Petitioner filed applications for

cancellation of removal and asylum, and withholding of removal under the Convention Against Torture ("CAT"). (Id. ¶ 22) Petitioner contends that, in the Dominican Republic, deportees with criminal convictions and mental health issues are detained, persecuted, and tortured. (Id.) On February 25, 2022, an immigration judge denied Petitioner's motion to terminate, finding that his conviction is an aggravated felony that renders him ineligible for asylum and cancellation of removal. (Id. ¶ 24) In an April 4, 2022 decision, the immigration judge explained her reasons for denying Petitioner's motion to terminate and denied his applications for withholding of removal and protection under CAT. (Id. ¶ 27) The immigration judge ordered Petitioner removed to the Dominican Republic. (Id.)

On April 28, 2022, Petitioner filed a timely notice of appeal to the Board of Immigration Appeals ("BIA"). (Id. ¶ 28) On August 25, 2022, the BIA dismissed Petitioner's appeal and upheld the immigration judge's denial of Petitioner's application for deferral of removal under CAT. (Id. ¶ 30) On September 1, 2022, Petitioner appealed the BIA's decision to the United States Court of Appeals for the Second Circuit, and moved for a stay of removal.[1] (Id. ¶ 31)

Between December 14, 2021 and July 25, 2022, Petitioner was detained by the New York Field Office of ICE at Orange County Correctional Facility in Goshen, New York. (Id. ¶¶ 3, 19) On July 25, 2022, Petitioner was transferred to Adams County Correctional Facility in Natchez, Mississippi, where he is presently detained. (Id. ¶¶ 3, 43-46)

On July 25, 2022, Petitioner filed a petition for a writ of habeas corpus in this District. (Pet. (Dkt. No. 1)) On August 18, 2022, Petitioner filed his First Amended Petition for

---

[1] According to the exhibits filed by Petitioner, his petition for review was filed on September 2, 2022, and he moved for a stay of removal on September 6, 2022. (DeBellis Decl., Ex. M (Dkt. No. 15-13) at 4)

a writ of habeas corpus (First Am. Pet. (Dkt. No. 9)), and on September 15, 2022, he filed his Second Amended Petition for a writ of habeas corpus. (Second Am. Pet. (Dkt. No. 14)) Petitioner names as Respondents Thomas Decker, the New York Field Office Director for ICE; Carl Dubois, the Director of Orange County Correctional Facility; Ubaid Ul-Haq, Assistant Chief Judge, Executive Office of Immigration Review; David Neal, Director, Executive Office of Immigration Review; Alejandro Mayorkas, Secretary of Homeland Security; and Merrick Garland, Attorney General of the United States. (Id.)

On December 20, 2022, this Court sua sponte directed the Clerk of Court to transfer this action to the United States District Court for the Southern District of Mississippi. (Dec. 20, 2022 Order (Dkt. No. 26) at 8) This Court concluded that it did not have jurisdiction over the Second Amended Petition because Petitioner was in the custody of the Southern District of Mississippi at the time he filed his original habeas petition. (Id. at 6-8) On December 21, 2022, this case was electronically transferred to the Southern District of Mississippi.

On December 23, 2022, Petitioner moved for reconsideration. (Ptr. Mot. (Dkt. No. 27)) In his motion, Petitioner – for the first time – disclosed the sequence of events leading up to his transfer to the Southern District of Mississippi. According to Petitioner, he filed his original habeas petition at 12:21 a.m. on July 25, 2022. (Id. at 2; Ptr. Mot., Ex. 1 (Dkt. No. 27-1) at 1) At approximately 3:00 a.m. on July 25, 2022, Petitioner was shackled and put into a van for purposes of transporting him from this District to the Southern District of Mississippi. (Ptr. Mot. (Dkt. No. 27) at 2; Second Am. Pet. (Dkt. No. 14) ¶ 44) Accordingly, when the original petition was filed, Petitioner was in custody in this District.

In a December 23, 2022 submission, the Government agreed that (1) Petitioner's factual account is accurate; (2) Petitioner was in custody in this District at the time he filed his petition; and (3) this Court has jurisdiction over the petition. (Gov't Resp. (Dkt. No. 28))

Given these circumstances, in a December 29, 2022 order, this Court granted Petitioner's motion for reconsideration, and concluded that it has jurisdiction over the petition. (Dec. 29, 2022 Order (Dkt. No. 29) at 2)

On April 5, 2023, this Court received the case from the Southern District of Mississippi. (Dkt. No. 30)

On May 1, 2023, the Second Circuit issued an order stating that Petitioner's "petition for review is currently held in abeyance pending a petition for rehearing/rehearing en banc in Debique v. Garland, 2d Cir. 21-6208," and that "a temporary stay of removal is GRANTED pending the resolution of the petition for rehearing/rehearing en banc in Debique." Garcia Pinach v. Garland, 2d Cir. 22-6421 (Dkt. No. 61) (emphasis in original).

## DISCUSSION

**I.     LEGAL STANDARD**

Title 28, U.S.C. § 2241 "'authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."'" Hernandez v. Decker, 18 Civ. 5026 (ALC), 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018) (quoting Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003); 28 U.S.C. § 2241(c)(3))). "Under this provision, federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention." Id. (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

## II. ANALYSIS

Petitioner's detention is governed by 8 U.S.C. § 1226(c). Under Section 1226(c)(1)(B), "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in," inter alia, 8 U.S.C. § 1227(a)(2)(A)(iii), and here Petitioner is charged as removable because ICE classifies his conviction for sexual abuse in the second degree as an aggravated felony, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Because the Second Circuit ordered a stay of Petitioner's removal, he is deemed "detained pending a decision" on removal. 8 U.S.C. § 1226(a); see id. § 1231(a)(1)(B).[2]

Petitioner contends that, pursuant to Section 1226(c), he "is entitled to a bond hearing under the fact-dependent inquiry assessing whether his detention has become unreasonable [and] in violation of due process," and that "even if [his] prolonged detention does not violate substantive due process, as a matter of procedural due process, individuals like [Petitioner] cannot continue to be detained for prolonged periods without basic procedural safeguards." (Ptr. Br. (Dkt. No. 16) at 18, 22)

The Government asserts that Petitioner's detention does "not violate due process," and that "the rationale justifying [his] continued detention" – the need "to protect the public and

---

[2] Although 8 U.S.C. § 1231 "governs detention of those noncitizens 'ordered removed' and who have therefore entered what the statute terms the 'removal period,'" Moscoso v. Joyce, 22 Civ. 6272 (PKC), 2023 WL 2016371, at *3 (S.D.N.Y. Feb. 15, 2023) (quoting 8 U.S.C. § 1231(a)(1)(A)), the Second Circuit's order staying Petitioner's removal renders Petitioner "detained pending a decision" on removal. 8 U.S.C. § 1226(a); see also Moscoso, 2023 WL 2016371, at *3 ("The removal period begins, and therefore a noncitizen is detained under [S]ection 1231, when the order of removal is administratively final. The order becomes 'administratively final' once it is affirmed by the BIA. The only relevant exception is where there is a petition for review of the removal order and the appellate court 'orders a stay of the removal.' In that circumstance, the removal period instead commences upon a final order from the reviewing court. Prior to this order, the noncitizen remains 'detained pending a decision' on removal and is held under [S]ection 1226(a). Where a stay is granted, a detainee may enter the removal period more than once – when the BIA affirms and then later when the Circuit affirms – with the statutory authority governing his detention likewise shifting.").

ensure [Petitioner's] presence for removal proceedings" – "ha[s] not diminished over time." (Gov't Opp. (Dkt. No. 20) at 21, 23)

### A.   Whether Petitioner's Detention Violates Substantive Due Process

"[P]rolonged detention under [Section] 1226(c) without providing an alien with a bond hearing will – at some point – violate the right to due process."[3] Sajous v. Decker, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018). "To determine whether mandatory detention under [Section] 1226(c) without a bond hearing has become unreasonable, courts in this District have 'overwhelmingly adopted' a 'fact-based inquiry' applied by Judge Nathan in Sajous." Gomes Herbert v. Decker, No. 19 Civ. 760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (quoting Dukuray, 2018 WL 5292130, at *3; citing Sajous, 2018 WL 2357266, at *10); see also Hernandez, 2018 WL 3579108, at *7-10 (applying the Sajous test and

---

[3] In Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015), the Second Circuit held that indefinite detention without a bond hearing under Section 1226(c) violates due process, and ruled that, "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to [S]ection 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." Id. at 613, 616. In Jennings v. Rodriguez, 138 S. Ct. 830 (2018), however, the Supreme Court noted that "[Section] 1226(c) does not on its face limit the length of the detention it authorizes," id. at 846, and the Court later vacated Lora and remanded for further consideration in light of Jennings.  See Shanahan v. Lora, 138 S. Ct. 1260, 1260 (2018).

Although Lora was vacated, its

> reasoning – including that indefinite detention under Section 1226(c) without a bond hearing violates due process – remains "strong persuasive authority." Post-Jennings v. Rodriguez, courts in the Southern District of New York have concluded that aliens subject to mandatory detention under Section 1226(c) are entitled to bond hearings "when their continued detention becomes unreasonable and unjustified."

Dukuray v. Decker, No. 18 Civ. 2898 (VLB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018) (quoting Sajous, 2018 WL 2357266, at *7; Brissett v. Decker, 324 F. Supp. 3d 444, 451 (S.D.N.Y. 2018)); see also Hernandez v. Decker, 18 Civ. 5026 (ALC), 2018 WL 3579108, at *10-11 (S.D.N.Y. July 25, 2018); Vallejo v. Decker, No. 18 Civ. 5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018).

granting a bond hearing); Vallejo, 2018 WL 3738947, at *3-6 (applying a fact-based inquiry – citing Sajous – and granting a bond hearing); Cabral v. Decker, 331 F. Supp. 3d 255, 261-63 (S.D.N.Y. 2018) (applying a fact-based inquiry – citing Sajous – and granting a bond hearing).

Under the Sajous test, courts consider the following factors:

> (1) "the length of time the alien has already been detained"; (2) "whether the alien is responsible for the delay"; (3) "whether the detained alien has asserted defenses to removal"; (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; and (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention."

Gomes Herbert, 2019 WL 1434272, at *2 (quoting Sajous, 2018 WL 2357266, at *10-11). "Some courts additionally consider '(6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.'" Jack v. Decker, No. 21 Civ. 10958 (VSB) (RWL), 2022 WL 4085749, at *10 (S.D.N.Y. Aug. 19, 2022), report and recommendation adopted, 2022 WL 16836918 (S.D.N.Y. Nov. 8, 2022) (quoting Hylton v. Decker, 502 F. Supp. 3d 848, 854 (S.D.N.Y. 2020)).

Here, Petitioner has been detained for seventeen months. (See Second Am. Pet. (Dkt. No. 14) ¶ 19 ("ICE arrested [Petitioner] on December 14, 2021," and he "has been detained since that date.")) "[D]etention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." Sajous, 2018 WL 2357266, at *10; see also Vallejo, 2018 WL 3738947, at *5-6 (granting a bond hearing after seventeen months' detention); Hylton, 502 F. Supp. 3d at 854 (granting a bond hearing after fourteen months' detention); Rosario v. Decker, No. 21 Civ. 4815 (AT), 2021 WL 3115749, at *3 (S.D.N.Y. July 20, 2021) (granting a bond hearing after eleven months' detention); Graham v. Decker, No. 20 Civ. 3168 (PAE), 2020 WL 3317728, at *5 (S.D.N.Y.

June 18, 2020) (granting a bond hearing after ten months' detention)). The length of detention thus weighs in favor of Petitioner.

As to the cause of the delay, Petitioner is not responsible for most of the delay in the immigration proceedings. Indeed, only about twenty-two days' delay can fairly be attributed to Petitioner. Petitioner's counsel "requested a briefing extension due in part to counsel's advocacy in ensuring that [Petitioner] receive appropriate medical treatment for his severe, and at the time completely uncontrolled, diabetes in detention," and the BIA granted a twenty-two-day extension. (Second Am. Pet. (Dkt. No. 14) ¶ 28) Moreover, "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention," and any delay associated with such opposition will not necessarily be attributed to him. Hernandez, 2018 WL 3579108, at *9; see also Dukuray, 2018 WL 5292130, at *8 ("'Pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged.'") (quoting Brissett, 324 F. Supp. 3d at 453). This factor thus also favors Petitioner.

As to Petitioner's defenses to removal, Petitioner seeks review of the BIA's determination that Petitioner's "conviction [under N.Y. Penal Law § 130.60(2)] was a categorical match for its aggravated felony definition," and that Petitioner is not entitled to a deferral of removal under CAT. (Second Am. Pet. (Dkt. No. 14) ¶¶ 17, 30-31) On May 1, 2023, the Second Circuit ordered a stay of Petitioner's removal, pending resolution of the petition for rehearing or rehearing en banc in Debique v. Garland, 2d Cir. 21-6208. See Garcia Pinach v. Garland, 2d Cir. 22-6421 (Dkt. No. 61). In Debique, the Second Circuit concluded that a conviction under N.Y. Penal Law § 130.60(2) is "a categorical match for 'sexual abuse of a minor,' an 'aggravated felony' under 8 U.S.C. § 1227(a)(2)(A)(iii)." Debique v. Garland, 58 F.4th 676, 684 (2d Cir. 2023) (per curiam). "The Court need not inquire into the strength of

[Petitioner's] defenses – it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." Sajous, 2018 WL 2357266, at *11. This factor thus weighs in favor of Petitioner.

As to the length of the civil detention compared to the term of imprisonment imposed for Petitioner's convictions, no term of imprisonment was imposed on Petitioner in connection with his 2020 conviction under N.Y. Penal Law § 130.60(2). (Second Am. Pet. (Dkt. No. 14) ¶ 17; DeBellis Decl. (Dkt. No. 15) ¶ 3) Accordingly, this factor also weighs in Petitioner's favor.

As to whether there is any meaningful difference between the facility at which Petitioner is presently detained and a penal institution, Petitioner contends that Adams County Correctional Facility is "indistinguishable from criminal detention," because, inter alia, it "is a secure facility, . . . subject to daily inmate 'counts,' and has limitations placed on his phone access, visitation, and correspondence." (Second Am. Pet. (Dkt. No. 14) ¶ 35) This factor weighs in favor of Petitioner.

As to the nature of the crime committed by Petitioner, sexual abuse in the second degree is a serious offense. This factor weighs in favor of the Government.

Finally, as to whether Petitioner's detention is near conclusion, Petitioner remains detained pending resolution of his petition for review before the Second Circuit. As stated, on May 1, 2023, the Second Circuit ordered a stay of Petitioner's removal, pending resolution of the petition for rehearing or rehearing en banc in Debique. See Garcia Pinach v. Garland, 2d Cir. 22-6421 (Dkt. No. 61). "[I]t is [thus] unclear when the Second Circuit will render a decision and

what the consequences of that decision would be," and Petitioner "is potentially facing many more months of detention." Jack, 2022 WL 4085749, at *14. This factor thus favors Petitioner.

In sum, while Petitioner's crime is serious, the remaining factors weigh in favor of granting him a bond hearing. The Court concludes that "due process requires the petitioner's release or a bond hearing to determine if [he] is a danger to the community or a risk of flight." Cabral, 331 F. Supp. 3d at 262.

### B. Bond Hearing Requirements

Petitioner argues that he is "entitled to certain procedural safeguards at a prolonged-detention bond hearing." (Ptr. Br. (Dkt. No. 16) at 32) In particular, he contends that "the government must bear the burden of justifying continued detention and do so by a clear-and-convincing standard," and that "the [immigration judge] conducting the bond hearing must consider less restrictive alternatives to detention and [Petitioner]'s ability to [post security] in determining whether detention or release (under conditions or on recognizance) is appropriate." (Id.)

In response, the Government contends that "the Constitution does not require the Government to bear the burden of proving that a noncitizen is a flight risk or a danger, much less by clear and convincing evidence." (Gov't Opp. (Dkt. No. 20) at 29) The Government further contends that "though ability to pay and alternatives to detention may be assessed when considering flight risk, an order requiring the [immigration judge] to consider those two factors would interfere with the 'broad discretion' afforded to an [immigration judge] in determining a noncitizen's eligibility for release on bond." (Id. at 31)

"[A] clear and convincing standard of proof, and consideration of the ability to pay and alternative conditions of release[,] are conditions most often ordered as constitutionally necessary." Doe v. Decker, No. 21 Civ. 5257 (LGS), 2021 WL 5112624, at *4 (S.D.N.Y. Nov.

11

3, 2021) (collecting cases). Indeed, "the 'overwhelming majority' of courts have concluded, post-Jennings, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainees' fundamental liberty interests." Joseph v. Decker, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018) (collecting cases). "Ordinarily, the Government bears the burden to demonstrate, by clear and convincing evidence, that a noncitizen's continued detention is justified by his present dangerousness and risk of flight." Jack, 2022 WL 4085749, at *15 (collecting cases). "In assessing this issue, the immigration judge should also consider [Petitioner]'s ability to pay and the availability of alternative means of assuring his appearance." Graham, 2020 WL 3317728, at *8.

Accordingly, at the bond hearing, the Government will bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, and the immigration judge must consider less restrictive alternatives to detention as well as Petitioner's ability to finance any bond.[4]

---

[4] In a December 12, 2022 letter, Petitioner requests that – if the Court grants his request for a bond hearing, that the Court conduct the hearing itself, due to Petitioner's "urgent medical condition[]." (Dec. 12, 2022 Ptr. Ltr. (Dkt. No. 23) at 1, 4)

"[F]ederal courts have inherent authority to admit to bail individuals properly within their jurisdiction." Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001). However, in the habeas context, the power to grant bail is a "limited one, to be exercised in special cases only." Id. Indeed, the "'difficult'" standard for bail pending habeas litigation requires the petitioner to "'demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective.'" Id. (quoting Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990)).

Here, the Court's order will provide that a bond hearing must occur within fourteen days. Accordingly, the Court need not conduct the bond hearing itself in order "'to make the habeas remedy effective.'" Id. (quoting Grune, 913 F.2d at 44). Petitioner's request that this Court conduct the bond hearing itself is denied.

### C.  Petitioner's Motion to Proceed Using His Initials

On August 26, 2022, Petitioner filed a motion to proceed using his initials rather than his full name. (Ptr. Mot. (Dkt. No. 11)) Petitioner "requests that the Court allow him to proceed in this action using his initials only" due to "his fear of persecution and torture by Dominican authorities and state-affiliated actors if removed from the United States." Petitioner's concerns are premised on his "mental health issues and status as a deportee with a criminal conviction." (Ptr. Br. (Dkt. No. 12) at 2-4) The Government takes no position on Petitioner's request. (Id. at 2)

Petitioner has not explained why he filed this case under his first and last name. Moreover, between July 25, 2022 and August 9, 2022 – and then again on May 4, 2023 – Petitioner filed documents on the docket showing his first and last name. Given the presence of these documents on the docket, granting the instant application would not serve any purpose. Accordingly, the motion is denied.

### CONCLUSION

For the reasons stated above, Petitioner is granted a bond hearing. The bond hearing must be conducted within fourteen days of this Order, and must meet the requirements set forth above. Failing such a hearing within fourteen days, Petitioner must be released from custody. Petitioner's motion to proceed using his initials is denied.

The Clerk of Court is directed to close this case.

Dated: New York, New York
       June 5, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

13